UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RYAN LEE BOOHER,

    Plaintiff,

v.                                                                  Case No.:  2:22-cv-677-KCD

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

Plaintiff Ryan Lee Booher sues under 42 U.S.C. §§ 405(g) and 1383(c)(3) to challenge the Commissioner of Social Security's decision denying his application for supplemental security income and disability insurance benefits. (Doc. 1.)[1] For the reasons below, the Commission's decision is affirmed.

## I. Background

The procedural history, administrative record, and law are summarized in the parties' briefs (Docs. 16, 17) and not fully repeated here. In short, Booher filed for benefits claiming he could not work because of PTSD, bilateral compartment syndrome, anxiety, depression, shoulder injuries, sleep apnea,

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

chronic fatigue, and GERD. (Tr. 337.) After his application was denied, Booher sought review by an administrative law judge ("ALJ"). (*Id.* at 224.)

Following a hearing, the ALJ agreed that Booher was not disabled. (Tr. 28-43.) To make that determination, the ALJ used the multi-step evaluation process established by the Commissioner. *See* 20 C.F.R. § 404.1520(a).[2] The ALJ found that although Booher had severe impairments of cervical radiculopathy, posterior fossa compression syndrome, obstructive sleep apnea, PTSD, major depressive disorder, anxiety, and adjustment disorder, he retained the residual functional capacity ("RFC") to engage in some work with certain non-exertional limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except occasionally climb stairs or ramps; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, and crouch; never kneel, frequently reach; occasional exposure to moving mechanical parts; no exposure to unprotected heights; understand, remember, and carry out simple, repetitive, reasoning level 1-2 tasks; and occasional interaction with the public.

---

[2] An individual claiming Social Security disability benefits must prove that he is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

(Tr. 35.)

After considering the RFC and other evidence, including vocational expert testimony, the ALJ ultimately concluded that Booher could not perform his past relevant work but could perform other jobs, including Routing Clerk, Carwash Attendant, and Small Products Assembler I. (Tr. 42-43.) Thus, Booher was not disabled as that term is defined in this context. (*Id.*)

Booher further exhausted his administrative remedies, and this lawsuit followed. (Doc. 16 at 2.)

## II. Standard of Review

Review of the Commissioner's (and, by extension, the ALJ's) decision denying benefits is limited to whether substantial evidence supports the factual findings and the correct legal standards were applied. 42 U.S.C. § 405(g); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a mere scintilla but less than a preponderance. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

When determining whether the ALJ's decision is supported by substantial evidence, the court must view the record as a whole, considering evidence favorable and unfavorable to the Commissioner. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. And even if the evidence preponderates against the Commissioner, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Finally, "[u]nder a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports [her] position; [she] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017).

### III. Analysis

Booher makes four arguments on appeal: (1) the ALJ erred in crafting a contradictory RFC; (2) the ALJ erred in providing a flawed hypothetical to the vocational expert ("VE"); (3) the ALJ erred by finding jobs available which require greater specific vocational preparation ("SVP") than recommended by the Social Security Administration; and (4) the ALJ erred in failing to provide him an opportunity to cross examine consultative examining psychologist Dr. Michael Inman. All of these arguments fail.

4

### A. Contradictory RFC

Booher's first argument focuses on the RFC, which states he can both "occasionally kneel" and "never kneel." (Tr. 35.) At first blush, this would seem to be a problem, but Booher has not shown error. As persuasively argued by the Commissioner, it is clear from the record that the ALJ's notation of "never kneel" was a scrivener's error. For instance, when discussing the persuasiveness of the state agency administrative medical findings, the ALJ adopted the consultant's assessment that Booher could occasionally kneel. (Tr. 39, 152.) And during the administrative hearings, the ALJ's hypothetical question to the VE included a limitation of occasionally kneeling. (Tr. 57-58, 84-91.) Finally, the hypothetical which ultimately produced the testimony regarding the jobs the ALJ cited in his decision specifically included a limitation to occasional kneeling. (Tr. 86-88.)

More impotently, however, Booher cannot show that the scrivener's error was harmful. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination"). The Dictionary of Occupational Titles ("DOT") job description for each job the ALJ found Booher could perform indicates "kneeling not present – activity or condition does not exist." (Tr. 43); *see* DOT, § 222.687-022, 1991 WL 672133 (routing clerk); § 915.667-010, 1991 WL 687869 (carwash attendant); § 706.684-022, 1991 WL 679050 (small products

5

assembler). Thus, even if the ALJ had intended to limit Booher to never kneeling, he could still perform the jobs cited. (Tr. 43.) The Eleventh Circuit has "declined to remand for express findings when doing so would be a wasteful corrective exercise in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision." *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013). Remanding here would be just such an exercise considering the scrivener's error caused no harm.

Despite the DOT job descriptions, Booher claims all three jobs require kneeling. (Doc. 16 at 14-16.) His only support for these conclusions is data from the Occupational Requirements Survey ("ORS"), which is prepared by the U.S. Bureau of Labor Statistics.[3] (*Id.*) Booher seems to suggest that remand is required for the ALJ to address the ORS data regarding exertions levels. The Court disagrees.

To deny disability benefits, the Commissioner must "show that there is other work available in significant numbers in the national economy that the claimant [can] perform" despite his impairments. *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017). To carry this burden, the Commissioner may "take administrative notice of reliable job information

---

[3] The ORS is prepared by the Bureau of Labor Statistics and "provides job-related information regarding physical demands; environmental conditions; education, training, and experience; as well as cognitive and mental requirements for jobs in the U.S. economy." *See* U.S. Bureau of Labor Statistics, Occupational Requirements Survey, at https://www.bls.gov/ors/.

6

available from various governmental and other publications," including the DOT, the County Business Patterns, Census Reports, Occupational Analyses, and the Occupational Outlook Handbook. 20 C.F.R. § 404.1566(d). The regulations also let the Commissioner base his decision on information supplied by a VE. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).

In *Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553 (11th Cir. 2019), the Eleventh Circuit faced a similar argument: an ALJ allegedly erred by failing to investigate a conflict between the VE's testimony and a job availability publication of the Bureau of Labor Statistics, the Occupational Employment Statistics ("OES"). It held that an ALJ must only independently verify a VE's testimony when it conflicts with the DOT. *Webster*, 773 F. App'x at 555-56. And further, the Eleventh Circuit noted "the figures in the OES are not part of the SSA's regulatory scheme." *Id.* (citing 20 C.F.R. § 404.1566(d)(1), (5)). The same reasoning applies here. The ALJ did not have to resolve conflicts between the VE's testimony and the ORS. And, like the OES, the ORS is not "part of the SSA's regulatory scheme." Thus, ALJ did not err by failing to consider the ORS data or coming to a contrary conclusion. *See Mesa v. Kijakazi*, No. 21-20424-CIV, 2022 WL 4369733, at *14 (S.D. Fla. May 11, 2022).

In any event, substantial evidence supports the ALJ's reliance on the VE's testimony. As explained, a VE may rely on DOT data. In fact, an ALJ may credit on a VE's opinion even without statistical support. *Biestek*, 139 S. Ct. at

1156-57. Booher alleges no tension between the DOT data and the VE's testimony, much less a "reasonably ascertainable or evident" conflict. *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1323 (11th Cir. 2021). Thus, substantial evidence supports the ALJ's ultimate conclusion.

### B. Hypothetical Questions to VE

Booher next argues that the hypothetical questions posed to the VE did not match the RFC. Here is what the ALJ said at the hearing:

> ALJ. Identifying the claimant's past relevant work as an ammunition specialist, please assume a hypothetical individual vocationally situated as the claimant with the same work history and education. The hypothetical individual is able to perform light exertional work. Occasionally climb stairs and ramps. Never climb ladders or scaffolds. Occasionally balance, stoop, kneel, crouch. Never crawl. Frequently reach. Must avoid – excuse me. Only occasional exposure to moving mechanical parts and avoid all unprotected heights. Would such an individual be able to perform the claimant's past relevant work?

(Tr. 86.) The ALJ then asked, "Is there any other work that such an individual is able to perform?" (*Id.* at 87.) From there, the VE identified the three jobs cited in the ALJ's decision—routing clerk, carwash attendant, and small products assembler. (*Id.*)

The next part of the hearing is where Booher claims error. He says that rather than imposing additional limitations reflected in the RFC, the ALJ asked whether an individual with the limitations specified in the first hypothetical could perform certain tasks:

> ALJ. Please assume the same abilities as a [*sic*] hypothetical 1. Could such an individual be able to perform simple, repetitive, reasoning level

8

>1 to 2 tasks with occasional interaction with the public? Would there be any other work such an individual is able to perform?

(Tr. 87-88.) According to Booher, because the final hypothetical question did not include the reasoning level and public interaction characteristics found in the RFC as *additional* mental restrictions, it was flawed.

For the VE's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). "If the ALJ presents the VE with incomplete hypothetical questions, the VE's testimony will not constitute substantial evidence." *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013). But an ALJ need not include impairments in the hypothetical that the ALJ found to be unsupported by the record. *Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011).

Booher again shows no error. The VE's response to the ALJ's questioning shows he understood the ALJ's addition of limitations to the initial hypothetical was meant to inquire as to whether an individual with that combination of mental restrictions could perform work. (Tr. 87-88.) Specifically, the VE testified that all the jobs he cited (routing clerk, car wash attendant, and small product assembler) were consistent with the additional mental restrictions (i.e., reasoning level 1 to 2 tasks with occasional interaction with the public) the ALJ added and would not reduce the availability of the

9

jobs in the national economy. (*Id.*) In fact, in further questioning, the VE asked the ALJ if he should carry over the mental restrictions from the first hypothetical when evaluating a later hypothetical limiting the individual to sedentary work. (Tr. 88.) Thus, the VE understood that the ALJ's hypothetical question included all physical and mental limitations ultimately assessed in the RFC, and his testimony as to the jobs that could be performed with those limitations is substantial evidence supporting the ALJ's finding that Booher could perform work available in significant numbers in the national economy.

### C. Specific Vocational Preparation

This next issue involves the Specific Vocational Preparation—*i.e.*, the time to learn how to complete a task—for the jobs the ALJ found Booher could perform. The three jobs identified by the VE have an SVP of 2.[4] The heading for Booher's argument summarizes his position:

> The ALJ erred in finding plaintiff could perform work with an SVP of 2 given that the Social Security Administration repeatedly informed plaintiff that his condition may limit his ability to perform his past work but he could perform work requiring only a very short on-the-job training period equating to SVP 1, the ALJ did not indicate he rejected this finding, and he gave no reason for rejecting the finding.

(Doc. 16 at 18.) Booher essentially claims the ALJ should have rejected the VE's testimony about his ability to perform the routing clerk, carwash

---

[4] SVP 1 requires a short demonstration only; SVP 2 requires anything beyond short demonstration up to and including 1 month.

attendant, and small products assembler jobs, because the Social Security Administration stated that he could only perform work equivalent to SVP 1, and those three jobs have an SVP of 2. (*Id.* at 18-19.)

Two problems. First, the Social Security Administration never limited Booher to SVP 1 work. The Social Security Administration said he is "capable of performing work that requires less physical effort, and only a very short, on-the-job training period." (Tr. 139, 140, 177, 179, 180, 182.) This statement does not have an SVP component, and Booher fails to explain how these limitations translate to only SVP 1 work. Second, and equally preclusive, the statement above was made by the Social Security Administration's disability examiner, first at initial consideration and then at reconsideration. Thus, the ALJ had a good reason for ignoring it: "Findings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether [the claimant is] disabled" are "inherently neither valuable nor persuasive." 20 C.F.R. §§ 404.1520b(c), 416.920b(c). As a result, the ALJ "will not provide any analysis about how [he] considered such evidence in [his] determination or decision." *Id.* Under this framework, the ALJ did not have to incorporate the disability examiner's findings even if they somehow limited Booher to SVP 1 work.

That still leaves the question of whether the VE's testimony that Booher could perform jobs with an SVP of 2 conflicts with the RFC. Even read this

11

broadly, Booher's argument still fails. The RFC restricted him to "simple, repetitive, reasoning level 1-2 tasks." (Tr. 35.) Booher has not shown this limitation categorically conflicts with an SVP 2 designation. *See Peterson v. Comm'r of Soc. Sec.*, No. 21-10086, 2021 WL 3163662, at *3 (11th Cir. July 27, 2021) ("We conclude that there was no apparent conflict between an RFC limitation to simple, routine, repetitive tasks and the DOT's description of jobs requiring level two reasoning.").

### D. Opportunity to Cross-Examine

Next up, Booher claims the ALJ erred by not proving an opportunity to cross-examine consultative examining psychologist Michael Inman, Ph.D. at the administrative hearing.[5] (Doc. 16 at 21-24.) The Commissioner counters that Booher cannot show prejudice. (Doc. 17 at 15.)

Dr. Inman performed a consultative psychological evaluation after the first administrative hearing. (Tr. 965-70.) He opined that Booher's mental status assessment indicated no cognitive impairments that would limit his ability to perform unskilled work. (*Id.* at 969.) In his Medical Source Statement, Dr. Inman concluded Booher had no more than mild functional limitations. (*Id.* at 961-63.)

---

[5] The Commissioner frames the issue as whether the ALJ was required to subpoena Dr. Inman for cross-examination. But that is slightly different than what Booher is arguing. Booher focuses on the ability to cross-examine, not on any failure to subpoena Dr. Inman.

12

In a letter to Booher's attorney, the ALJ stated that he had Dr. Inman's report and was entering it into the record. (Tr. 426.) The letter laid out the actions Booher could take:

> You may also request a supplemental hearing. If you request a supplemental hearing, I will grant the request unless I decide to issue a fully favorable decision. If a supplemental hearing is scheduled, the claimant may testify, produce witnesses, and, subject to the provisions of 20 CFR 404.935, 404.949, 416.1435, and 416.1449, submit additional evidence and written statements. In addition, you may request an opportunity to question witnesses, including the author(s) of the new evidence. I will grant a request to question a witness if I determine that questioning the witness is needed to inquire fully into the issues. If a witness declines a request by me to appear voluntarily for questioning, I will consider whether to issue a subpoena to require his or her appearance.

(Tr. 426.)

Booher's attorney objected to Dr. Inman's findings, stating that his evaluation was inconsistent with the opinions and medical records from treating physicians and asked for a supplemental hearing "so that we may cross examine Dr. Inman with regard to these inconsistencies." (Tr. 429.) Booher also forwarded Dr. Inman's report to his treating provider, Dr. Alfred Vonetes, who provided a letter addressing Booher's condition. (*Id.* at 1045.) The ALJ conducted a supplemental hearing (*Id.* at 49-65), but Dr. Inman did not participate. At that hearing, Booher's counsel made this statement:

> ATTY: I don't really have any questions for the claimant, Judge. I had objected to 9F and l0F, the reports of Dr. Inman [phonetic] and had requested the opportunity to talk to him about his reports. I understand that it is difficult to get them to appear for hearings but essentially my objections were based on the fact that the only thing that Dr. Inman

13

> reviewed in regards the medical records before giving any opinion was the Von Care report from November 18, 2021, of Dr. Vonnet. So I was a little perplexed because his opinions are completely different. However, if he is basing it on that report, it was peculiar as to how he would arrive at those things. Nevertheless, I sent the RFC over and the things over to Dr. Vonnet to ask him to opine on what his opinions were and you now have that in I believe 13F where he notes that while certainly he understands other doctors' opinions but what he is talking about would be difficulty in maintaining employment. He notes he would leave work, frequent tardiness, absences, [INAUDIBLE], things of that nature. So that's what I want to bring to the court attention and that I would like the opportunity to pose hypotheticals to the vocational witness based on those limitations. As far as testimony –

(Tr. 53-54.)

The ALJ considered Dr. Inman's opinion in his decision, finding it partially persuasive. (Tr. 41.) In doing so, the ALJ evaluated the supportability and consistency of Dr. Inman's assessment. 20 C.F.R. §§ 404.1520c, 416.920c. The ALJ ultimately concluded that while Dr. Iman's assessment was supported by his own mental status examination and Booher's education, his opinion was not consistent with the other evidence in the record, which supported moderate functional difficulties in Booher's ability to interact with others and maintain concentration, persistence, and pace (rather than mild difficulties opined by Dr. Inman). (*Id.*)

The ALJ has a basic duty to develop a full and fair record. But that does not relieve the claimant of his burden. "[T]he claimant bears the burden of proving that he is disabled, and consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276

(11th Cir. 2003). An ALJ is required to step in only when the record lacks "sufficient evidence . . . to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). "The duty is triggered, for example, when there is an ambiguity in the record or when the record is inadequate to allow for proper evaluation of the evidence." *Mishoe v. Astrue*, No. 5:08-CV-371-OC-GRJ, 2009 WL 2499073, at *7 (M.D. Fla. Aug. 14, 2009).

Further, "there must be a showing of prejudice before [the court] will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [ALJ] for further development of the record." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995). In evaluating the necessity for a remand, courts are "guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Id.* To establish an evidentiary gap in the record, a claimant must "identify what facts could have been submitted that would have changed the outcome." *Correa v. Colvin*, No. 8:15-CV-461-T-TGW, 2016 WL 7334642, at *4 (M.D. Fla. Mar. 18, 2016). When an ALJ "substantially relies upon a post-hearing medical report that directly contradicts the medical evidence that supports the claimant's contentions," the opportunity for cross-examination of the medical report's author should generally be provided. *Demenech v. Sec'y of the Dep't of Health & Hum. Servs.*, 913 F.2d 882, 885 (11th Cir. 1990); *see also Martz v. Comm'r, Soc. Sec. Admin.*, 649 F. App'x 948, 962 (11th Cir. 2016) (stating, "[t]he

determination of whether cross-examination is warranted appears to be within the discretion of the ALJ").

Here, the ALJ granted the request for a supplemental hearing, but warned Booher he would only grant a request to question Dr. Inman "if [he] determine[d] that [it was] needed to inquire fully into the issues." (Tr. 426.) Booher did not ask that the ALJ subpoena Dr. Inman.[6] (*Id.*) In any event, Booher has not shown prejudice. The ALJ reviewed the evidence of record, properly considered Dr. Inman's opinion, and only found his opinion partially persuasive, concluding that Booher is more restricted than Dr. Inman opined. (Tr. 41.) Further, the ALJ provided Booher with a supplemental hearing, heard his counsel's argument about the report at the hearing, and reviewed Dr. Vonetes's letter submitted after Dr. Inman's report and opinion. (Tr. 1045.) The ALJ provided Booher ample opportunity to be heard. *See Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 855 (11th Cir. 2018) (finding "[b]ecause [the claimant] cannot show prejudice, we need not consider his arguments about whether the ALJ followed [the Administration's] internal rules or whether its failure to do so could constitute a violation of due process").

And unlike in the case law Booher cites, Dr. Inman's report was not the primary basis on which the ALJ relied in denying his application. *See*

---

[6] Booher did request that a subpoena be issued for another medical provider if they failed to provide records. (Tr. 432-33.)

16

*Demenech v. Sec'y of the Dep't of Health & Hum. Servs.*, 913 F.2d 882, 884 (11th Cir. 1990). The ALJ assigned the report partial weight, noting that he had afforded Booher "the greatest benefit of the doubt and finds the totality of the evidence, including the findings of an anxious mood, support a finding that the claimant has moderate difficulties in his ability to interact with others and concentrate, persist, or maintain pace." (Tr. 41.) Thus, the Court agrees with the Commissioner—Booher failed to show the ALJ was required to allow him to cross-examine Dr. Inman. (Doc. 17 at 15-17.)

One last issue. Booher seems to separately claim that the ALJ failed to properly weigh Dr. Inman's opinion. (Doc. 16 at 23-24.) This argument also falls short. The ALJ conducted the required supportability and consistency analysis. Although not overly robust, the ALJ's discussion of Dr. Inman's assessment in conjunction with the remaining medical record is sufficient. *See Roussin v. Comm'r of Soc. Sec.*, No. 2:20-CV-905-SPC-MRM, 2021 WL 6205948, at *6 (M.D. Fla. Dec. 16, 2021).

## IV. Conclusion

Considering the record as a whole, substantial evidence supports the ALJ's findings, and the correct standards were applied. Accordingly, the Court **AFFIRMS** the Commissioner's decision and directs the Clerk to enter judgment for the Commissioner and against Ryan Lee Booher and close the file.

**ORDERED** in Fort Myers, Florida this January 3, 2024.

_Kyle C. Dudek_
Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record

18